UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| **RICHARD MORRISON,** | ) | **CASE NO. 4:06CV2087** |
| | ) | |
| | ) | |
| Petitioner | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| -vs- | ) | |
| | ) | |
| **HARLEY G. LAPPIN, et al.,** | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| Respondents. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

      On November 6, 2006, pro se petitioner Richard Morrison filed a Memorandum of Law in support of the above-captioned petition for writ of habeas corpus he filed pursuant to 28 U.S.C. § 2241. The petition is filed against Federal Bureau of Prisons Director Harley Lappin, Correction Corporation of America President John Ferguson, and Warden Robert Tapia of the Northeast Ohio Correctional Center (NOCC). Mr. Morrison, who is incarcerated at the NOCC, claims he is illegally in custody because he was convicted in a court which lacked jurisdiction and violated the principle of specialty of the extradition treaty between the United States and the United

Kingdom.

*Background*

In 1990, the United States government requested Mr. Morrison's extradition from Jamaica pursuant to an extradition treaty with Great Britain, effective December 22, 1931, and continued in force between the United States and Jamaica by exchange of notes on August 7, 1962. (Pet's Ex. 3, "Extradition Treaty-Great Britain, December 22, 1931," United States- United Kingdom, 47 Stat. 2122) (hereinafter "Treaty"). In a copy of what appears to be an extradition request, dated July 6, 1990, the United States explained that because Mr. Morrison was the subject of indictment "No. 88-652-CR-Gonzalez" filed in the United States District Court for the Southern District of Florida, his extradition to the United States was requested based on the following three counts of the 62 counts in the indictment:

> (1) Count 1 - Conspiracy to distribute and possess with intent to distribute cocaine and marijuana in violation of 21 U.S.C. §846; (2) Count 3 - Conspiracy to conduct and participate in the conduct of the affairs of an enterprise through a pattern of racketeering involving, . . . : conspiracy to distribute cocaine and marijuana and murder or attempted murder, in violation of 18 U.S.C. §1962(D); and (3) Count 4 - Conducting and participating in the conduct of affairs of an enterprise through a pattern of racketeering involving, . . . : a)conspiracy to distribute cocaine and marijuana; and b) murder or attempted murder, in violation of 18 U.S.C. §1962(C) and 2.

(Pet.'s Ex. 1 at 2.) The United States further noted that the crimes of murder, attempted murder, and narcotic drug offenses were all extraditable offenses, as well as conspiracy to commit an extraditable offense. (Pet.'s Ex.1 at 2- 3.) Following a hearing before a magistrate, the Jamaican government granted the request to extradite Mr. Morrison to the United States.

When Mr. Morrison arrived in the United States on June 12, 1991, he was transported

to the federal District Court for the Middle District of Florida to face an indictment filed in that court.  See United States v. Morrison, No. 89-CR-57-FTM-21 (M.D. Fl. 1989).  After pleading not guilty to the charges set forth in the indictment, Mr. Morrison was found guilty by a jury on February 10, 1992.  He was sentenced by the court to 293 months incarceration on April 24, 1992.

Two years after the court imposed petitioner's sentence, his trial attorney filed a motion for a new trial pursuant to Rule 33.[1]  The motion was based on the averment that the Middle District Court of Florida lacked jurisdiction to convict Mr. Morrison because he was extradited on charges set forth in an indictment filed in the Southern District Court of Florida.  As such, it was argued that his indictment in the Middle District Court of Florida "violated the 'Principle of Specialty' of the UK/Jamaica extradition treaty."  (Pet. at 3.)

The district court denied the motion for a new trial and petitioner appealed that decision, as well as his underlying conviction, to the Eleventh Circuit Court of Appeals.  While he raised five issues in his appeal, the claims relevant to the present action included his contention that: (1) district court lacked personal jurisdiction because his prosecution on the Middle District charges violated the doctrine of specialty; . . . (3) the court erred in denying his motion for judicial notice of facts contained in foreign documents; . . . and (5) the court's enhancement of his sentence based on his role in the offense violated the doctrine of specialty.  The Court of Appeals denied his claims, in part, because it found that Mr. Morrison waived any challenge to the court's personal jurisdiction by failing to assert that defense in a pretrial motion.  Moreover, the appeals court held that the trial court did not abuse its discretion by refusing to take judicial notice of facts contained in non-

---

[1]Although Mr. Morrison states that the motion was filed pursuant to Rule "33," in the district court's order denying the motion, it states that the motion was filed pursuant to Federal Criminal Rule "35."

certified, unauthenticated foreign documents and that the doctrine of specialty was not violated, as a matter of law, by the court's enhancement of his sentence based on his role in the offense.

Mr. Morrison filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 in the federal district court for the Middle District of Florida on November 5, 1997. In the motion he argued that he received ineffective assistance of counsel and was the victim of prosecutorial misconduct. Without addressing the merits of Mr. Morrison's claims, the district court denied the motion to vacate on December 4, 1997 as time-barred.[2] On October 28, 1998, the district court granted his application for a certificate of appealability (COA). Mr. Morrison appealed the denial of the § 2255 motion, and the Eleventh Circuit Court of Appeals affirmed the district court's determination that the motion was time-barred.

Petitioner states that he has "filed numerous other post-conviction motions, including a Rule 12(b)(2) Motion and two 28 U.S.C. § 2241 petitions in the Eleventh Circuit, [and] all were Dismissed without reaching the merits for lack of jurisdiction pursuant to the Eleventh Circuit case law." (Pet. at 4-5.) Quoting section 2241, he asserts this court's jurisdiction based on the provision that the writ should extend to a prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(3). He claims that he was precluded from raising any treaty challenges under the doctrine of specialty until the Government of Jamaica registered a formal Protest with the United States on April 5, 1995. After the Protest was registered, he alleges that the United States government suppressed that information until September 21, 2001.

---

[2] In his order denying the motion, Judge Gagliardi stated that the United States Attorney for the Middle District Court of Florida submitted an extradition request to the Jamaican government on October 31, 1989, following the issuance of an indictment filed August 25, 1989.

4

He adds that because questions challenging the underlying jurisdiction of a court cannot be waived, it is not necessary for him to show 'cause' for his failure to raise this claim earlier.

*Analysis*

Mr. Morrison now raises three issues before this court pursuant to 28 U.S.C. § 2241. He contends (1) that the United States District Court for the Middle District of Florida "did not have jurisdiction as conferred by the extradition treaty because trial [court] violated the doctrine of specialty and dual criminality" (Pet. at 6.); (2) the United States Government's suppression of a protest letter violates Brady v. Maryland; and, (3) his Sixth Amendment right to effective counsel was violated.

Referring to the extradition request, Mr. Morrison argues that under the doctrine of specialty, the United States could only extradite him based on the specific criminal acts alleged in the United States' request, as set forth in the indictment in the Southern District Court of Florida.³ (Pet.'s Ex. 1. , Request for Extrd.) As an illustration of its intent, he maintains that the Jamaican government required that the United States certify the events leading up to his indictment before consenting to his extradition.⁴ Mr. Morrison further reasons that, because the basis for federal

---

³Under international law, the "specialty doctrine" generally prohibits a requesting State from prosecuting an extraditee "for an offense other than the one for which surrender was made." I.A. Shearer, Extradition in International Law 146 (1971). It requires that persons who are surrendered by a government for prosecution based on specific alleged criminal activity will not be subject to indiscriminate prosecution by the receiving government. See Fiocconi v. Attorney General of United States, 462 F.2d 475, 481 (2d Cir.), cert. denied, 409 U.S. 1059 (1972). This doctrine "is designed to prevent prosecution for an offense for which the person would not have been extradited." RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 477(cmt. b) (1987).

⁴The court notes that the statute provides, in relevant part:

Whenever there is a treaty or convention for extradition between

(continued...)

jurisdiction is "an essential element of an offense," and his presence in the United States was predicated solely on his extradition to face charges in the Southern District Court of Florida, the Middle District Court of Florida lacked jurisdiction to bring him to trial.

Citing the Supreme Court's opinion in United States v. Rauscher, 119 U.S. 407 (1886),[5] Mr. Morrison claims he has standing to assert challenges under the provisions of the treaty agreement based on the rule of specialty because the court's jurisdiction over him was predicated

---

[4](...continued)
> the United States and any foreign government, . . . , any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, . . ., may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, or provided for under section 3181(b), issue his warrant for the apprehension of the person so charged, . . .. Such complaint may be filed before and such warrant may be issued by a judge or magistrate judge of the United States District Court for the District of Columbia . . . . If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, . . . , **he shall certify the same**, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, . . ..

18 U.S.C. §3184 (emphasis added).

[5]In Rauscher, the Supreme Court addressed the question of whether the extradition treaty between England and the United States prohibited prosecution of the defendant for a crime other than that for which he was extradited. It was the first case in which the Supreme Court recognized the specialty doctrine. The facts involved an American merchant ship officer who had been extradited from Great Britain, under an extradition treaty, to be charged with murder of a crew member. He was subsequently convicted of assault and inflicting cruel and unusual punishment, neither of which were listed as extraditable offenses in the treaty. The Court held the defendant could be tried only for the offense "with which he is charged in the extradition proceedings, and for which he was delivered up." Id. at 431-32.

on his extradition.[6] In that regard he refers to the official records of the Supreme Court of Judicature of Jamaica, the indictment in the Southern District of Florida, affidavits and the warrant of arrest to justify his extradition, all to postulate that he was extradited solely for the purpose of facing charges in the Southern District Court of Florida, only. As such, the government's decision to try him in the Middle District Court of Florida was a matter outside that court's jurisdiction. He adds that the Jamaican government filed a formal protest letter with the United States Department of State on April 5, 1995 wherein it protested "the breach of the 'Doctrine of Specialty' of the treaty, because of the petitioner's unlawful trial in the Middle District of Florida, which was also suppressed by the United States government from the petitioner, clearly prove that the petitioner was tried illegally in the Middle District of Florida." (Pet. at 8.)

With regard to his Brady argument, Mr. Morrison claims that before his trial in the Middle District Court of Florida, his attorney advised the government that petitioner was extradited on charges in the Southern District Court of Florida, not the Middle District. He claims the government responded that its research indicated that it was, in fact, the Middle District Court of

---

[6] The question of whether a criminal defendant has standing to assert a violation of the doctrine of specialty has split the federal circuit courts of appeals. Compare United States v. Kaufman, 874 F.2d 242, 243 (5th Cir.1989) (per curiam) (denial of petition for rehearing and suggestion for rehearing en banc) (stating that only the offended nation that is a party to a treaty may complain of a breach of the treaty) and Demjanjuk v. Petrovsky, 776 F.2d 571, 583-84 (6th Cir.1985) (expressing doubt that the individual has standing on the grounds that "[t]he right to insist on application of the principle of specialty belongs to the requested state, not to the individual whose extradition is requested") (citation omitted), cert. denied, 475 U.S. 1016 (1986) and Judgment Vacated on other grounds by Demjanjuk v. Petrovsky, 10 F.3d 338 (6th Cir.1993), rehearing and suggestion for rehearing en banc denied (Feb 24, 1994) with United States v. Levy, 905 F.2d 326, 328 n. 1 (10th Cir.1990) (extradited individual has standing to claim a violation of the rule of specialty), cert. denied, 498 U.S. 1049(1991) and United States v. Thirion, 813 F.2d 146, 151 n. 5 (8th Cir.1987) (allowing the extradited individual to bring any objections the rendering country might have raised) and United States v. Najohn, 785 F.2d 1420, 1422 (9th Cir.) (same), cert. denied, 479 U.S. 1009 (1986).

Florida which requested his extradition.  However, the government allegedly failed to respond to a formal request for the documents to support its position.[7] He argues that if the government had "the extradition hearing documents, which now clearly show that there is no jurisdiction conferred by the treaty on the part of the Middle District Court, petitioner's trial and subsequent conviction would not have occurred." (Pet. at 14.)  Therefore, he maintains that the government violated its obligation under Brady to disclose favorable evidence to him before trial, with or without a formal request.[8]

It is Mr. Morrison's third and final assertion that he received inadequate counsel during his trial in violation of the Sixth Amendment.  He claims his attorney "willfully deprived" him of his right to declare that the Middle District Court of Florida lacked jurisdiction under federal law and the Treaty under which he was extradited.

*28 U.S.C. § 2241*

Courts have uniformly held that claims asserted by federal prisoners seeking to challenge their convictions or imposition of their sentence shall be filed in the sentencing court under 28 U.S.C. § 2255, see Bradshaw v. Story, 86 F.3d 164, 166 (10th Cir. 1996); Cabrera v. United States, 972 F.2d 23, 25-26 (2d Cir.1992); Cohen v. United States, 593 F.2d 766, 770 (6th Cir.1979), and that claims seeking to challenge the execution or manner in which the sentence is served shall be filed in the court having jurisdiction over the prisoner's custodian under 28 U.S.C. § 2241. Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998)(citing United States v. Jalili, 925 F.2d 889,

---

[7] Considering the fact that the Court of Appeals denied Mr. Morrison's direct appeal of his conviction based on the fact that he never raised the issue in a pre-trial motion, it is not clear if or when this information was solicited from the Assistant United States Attorney.

[8] Since the protest letter was issued in 1995, well after Mr. Morrison's conviction in 1992, it is impossible for him to argue that this was exculpatory evidence the government withheld prior to trial in violation of Brady.

8

893 (6th Cir. 1991)); Wright v. United States Bd. of Parole, 557 F.2d 74, 77 (6th Cir.1977). The remedy afforded under § 2241 is not an additional, alternative or supplemental remedy to that prescribed under § 2255. See Bradshaw, 86 F.3d at 166.

Here, Mr. Morrison is not challenging the execution or manner in which his sentence is being served. Instead, he is directly attacking his conviction and seeks immediate release as an appropriate remedy. This is a matter squarely within the confines of § 2255, which provides that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, **or that the court was without jurisdiction to impose such sentence**, . . . , may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255 (2006)(emphasis added). The statute further provides that "[a]n application for a writ of habeas corpus on behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, . . . , unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention." Id. This provision, known as the "safety valve," establishes that prisoners seeking a court's jurisdiction pursuant to § 2241 in lieu of a § 2255 motion must first allege that the remedy afforded under § 2255 is "inadequate or ineffective to test the legality of his detention." Accord United States v. Hayman, 342 U.S. 205, 223 (1952); In re Hanserd, 123 F.3d 922, 929 (6th Cir.1997).

Mr. Morrison alleges that he did apply for relief pursuant to § 2255 in the court which sentenced him. He has advised further that the motion was denied by the trial court. That fact, alone, however, does not establish that his § 2255 remedy is inadequate or ineffective. See In re

9

Dorsainvil, 119 F.3d 245, 251 (3d Cir.1997), Tripati v. Henman, 843 F.2d 1160, 1162 (9th Cir.), cert. denied, 488 U.S. 982 (1988).  It is beyond question that § 2255 is not inadequate or ineffective merely because an individual is unable to obtain relief under that provision. See, e.g., Charles v. Chandler, 180 F.3d 753, 756 (6th Cir.1999) (per curiam). Contrary to Mr. Morrison's assertion, the § 2255 remedy is not considered inadequate or ineffective simply because the petitioner is procedurally barred from pursuing relief under § 2255, see In re Vial, 115 F.3d 1192, 1194 n. 5 (4th Cir.1997); Garris v. Lindsay, 794 F.2d 722, 726-27 (D.C.Cir.) (per curiam), cert. denied, 479 U.S. 993 (1986), or because the petitioner has been denied permission to file a second or successive motion to vacate.  See In re Davenport, 147 F.3d 605, 608 (7th Cir.1998).

Mr. Morrison has not stated any reasonable basis upon which he can assert this court's § 2241 jurisdiction.  The fact that he is procedurally barred is not a basis upon which he can argue that his remedy under § 2255 is inadequate or ineffective.  Under a ~ 2255's safety valve, the showing that one's remedy under § 2255 is inadequate or ineffective is a rigorous one. The Sixth Circuit has noted, "No circuit court has to date permitted a post-AEDPA [Anti-Terrorism and Effective Death Penalty Act, which amended Section 2255] petitioner who was not effectively making a claim of 'actual innocence' to utilize § 2241 (via § 2255's 'savings clause') as a way of circumventing § 2255's restrictions on the filing of second or successive habeas petitions." Charles, 180 F.3d at 757.  To this end, the Supreme Court has clarified that "[t]o establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 623 (1998) (internal citations and quotations omitted).  The Court went on to say, "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency . . . " Id. at

10

623-24. To establish actual innocence, a petitioner must demonstrate that, "'in light of all the evidence, '"'"it is more likely than not that no reasonable juror would have convicted him." Schlup v. Delo, 513 U.S. 298, 327-328 (1995) (quoting Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L. Rev. 142, 160 (1970)).

By his own admission, Mr. Morrison is not arguing that he is innocent of the crimes for which he was convicted, but instead argues that the trial court lacked jurisdiction to convict him of the offense for which he is currently incarcerated. This is not a claim of actual innocence and, therefore, not a basis upon which a petitioner can utilize the safety valve of § 2255 to seek § 2241 relief from this court.

Based on the foregoing, this action is dismissed without prejudice pursuant to 28 U.S.C. § 2241. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED.**

**DATE: December 8, 2006**

 s/Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**UNITED STATES DISTRICT JUDGE**